1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   THOMAS T. ALFORD,                              No.  2:13-cv-2143 DAD P

12                Plaintiff,

13        v.                                        ORDER AND

14   DR. GYAAMI et al.,                             FINDINGS AND RECOMMENDATIONS

15                Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under

18   42 U.S.C. § 1983.  This matter is before the court on a motion for summary judgment brought

19   pursuant to Rule 56 of the Federal Rules of Civil Procedure on behalf of defendants Dr. Gyaami

20   and Dr. Calderon.  Plaintiff has filed an opposition to the motion, and defendants have filed a

21   reply.

22        For the reasons discussed below, the court will recommend that defendants' motion for

23   summary judgment be granted.

24                                        **BACKGROUND**

25        Plaintiff is proceeding on an amended complaint against defendants Dr. Gyaami and Dr.

26   Calderon.  Therein, plaintiff alleges that defendant Dr. Gyaami failed to provide him with

27   adequate dental care.  For example, plaintiff alleges that Dr. Gyaami forced plaintiff to "flop

28   around like [a] fish" in the dental chair during a teeth cleaning and never provided him with an

                                                 1

1  anesthetic during the procedure.  Plaintiff also alleges that defendant Dr. Calderon, defendant Dr.

2  Gyaami's supervisor, covered up defendant Dr. Gyaami's improper conduct and included false

3  statements in reports addressing defendant Dr. Gyaami's conduct.  In terms of relief, plaintiff

4  requests damages as well as an independent dental examination and further dental treatment.

5  (Am. Compl. at 5-5f & Ex. C.)

6  **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

7       Summary judgment is appropriate when the moving party "shows that there is no genuine

8  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

9  Civ. P. 56(a).

10       Under summary judgment practice, the moving party "initially bears the burden of

11  proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

12  627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

13  The moving party may accomplish this by "citing to particular parts of materials in the record,

14  including depositions, documents, electronically store information, affidavits or declarations,

15  stipulations (including those made for purposes of the motion only), admission, interrogatory

16  answers, or other materials" or by showing that such materials "do not establish the absence or

17  presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

18  support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

19       When the non-moving party bears the burden of proof at trial, "the moving party need

20  only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

21  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).  See also Fed. R. Civ. P. 56(c)(1)(B).

22  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

23  against a party who fails to make a showing sufficient to establish the existence of an element

24  essential to that party's case, and on which that party will bear the burden of proof at trial.  See

25  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

26  nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

27  circumstance, summary judgment should be granted, "so long as whatever is before the district

28  court demonstrates that the standard for entry of summary judgment, . . ., is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

3

1

**OTHER APPLICABLE LEGAL STANDARDS**

2

I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

3

The Civil Rights Act under which this action was filed provides as follows:

4

Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

5

6

7

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

8

actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

9

Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

10

(1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

11

meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

12

omits to perform an act which he is legally required to do that causes the deprivation of which

13

complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

14

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

15

their employees under a theory of respondeat superior and, therefore, when a named defendant

16

holds a supervisorial position, the causal link between him and the claimed constitutional

17

violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

18

Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations

19

concerning the involvement of official personnel in civil rights violations are not sufficient.  See

20

Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

21

II.  The Eighth Amendment and Inadequate Dental Care

22

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment

23

prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v.

24

Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  In order to

25

prevail on a cruel and unusual punishment claim, a prisoner must allege and prove that

26

objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

27

acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

28

Seiter, 501 U.S. 294, 298-99 (1991).

4

There is no question that "[d]ental care is one of the most important medical needs of inmates." Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (quoting Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980). To prevail on an Eighth Amendment claim that arises in this context, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate

1  indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

2  ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

3      Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S.

4  at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a

5  plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th

6  Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059;

7  Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198,

8  200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.

9  1985).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would

10  provide additional support for the inmate's claim that the defendant was deliberately indifferent to

11  his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

12      Finally, mere differences of opinion between a prisoner and prison medical staff or

13  between medical professionals as to the proper course of treatment for a medical condition do not

14  give rise to a § 1983 claim.  See Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012); Toguchi,

15  391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891

16  F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

17      **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND EVIDENCE**

18      Defense counsel has submitted a statement of undisputed facts supported by declarations

19  signed under penalty of perjury by defendants Dr. Gyaami and Dr. Calderon.  That statement of

20  undisputed facts is also supported by citations to plaintiff's dental records, his requests for health

21  care services, and his inmate appeals and prison officials' responses thereto.  The evidence

22  submitted by the defendants in support of the pending motion for summary judgment establishes

23  the following.

24      From June 6, 2008, to the present, plaintiff has been confined at California Medical

25  Facility ("CMF").  Defendants Dr. Gyaami and Dr. Calderon (who is defendant Dr. Gyaami's

26  supervisor) are both dentists.  At the time this action arose, both were employed by the California

27  Department of Corrections at CMF.  On January 19, 2009, plaintiff sought treatment for a crown

28  that had come off a molar tooth (tooth 18).  On February 3, 2009, in response to plaintiff's health

6

care services request, Dr. Sorunke examined plaintiff, removed old cement from the crown, re-cemented the crown on the tooth, and scheduled plaintiff for a comprehensive examination. (Defs.' SUDF 3-6, Exs. C-D, Gyaami Decl.)

On June 3, 2009, plaintiff saw defendant Dr. Gyaami for a comprehensive dental exam. During the exam, defendant Dr. Gyaami noted light tartar, plaque, and bone loss, and diagnosed plaintiff has having generalized periodontitis, a condition indicative of poor oral hygiene over many years.  Periodontitis is an inflammatory disease affecting the tissues surrounding and supporting the teeth that causes progressive loss of the alveolar bone around the teeth.  If left untreated, periodontitis can lead to the loosening and subsequent loss of teeth.  Measures to prevent periodontal disease include twice-daily brushing and daily flossing, rinsing daily with warm salt water, and teeth cleaning (or scaling) every three to six months.  Brushing and flossing removes the plaque on the surface of and between the teeth.  Rinsing with warm salt waters kills bacteria.  Scaling removes accumulated calculus – hardened plaque that cannot be removed by brushing or flossing.  Scaling is typically performed using a powered ultrasonic instrument with a vibrating metal tip that chips off the tartar and a water-spray to wash it and keep the tip cool. (Defs.' SUDF 7-12, Ex. D, Gyaami Decl., Calderon Decl.)

When healthy, teeth are very strong and are unlikely to be damaged by cleaning.  If a patient's teeth are soft or weak, however, ultrasonic scaling can chip off some of the surface enamel even when a dentist is careful and properly performs the scaling.  When such chipping occurs, the tooth can usually be repaired by filling in any crevice or gap.  Patients with periodontal disease who have not had their teeth cleaned for a long time are often unpleasantly surprised by defects that appear in their teeth when all the accumulated plaque and tartar are removed.  (Defs.' SUDF 13-14, Calderon Decl.)

Defendant Dr. Gyaami's prescribed course of treatment for plaintiff's periodontitis was for plaintiff to brush and floss better, rinse with warm salt water, and schedule another visit to have his teeth scaled.  Plaintiff consented to Dr. Gyaami's prescribed course of treatment.  On July 21, 1999, defendant Dr. Gyaami scaled all of plaintiff's teeth using a powered ultrasonic scaler.  Customarily, scaling is performed without an anesthetic.  But if a patient is sensitive or

1   requests an anesthetic, it is customary practice to note the patient's sensitivity or request and

2   administer an anesthetic, absent some reason not to do so.  Before and during the scaling on July

3   21, 2009, plaintiff did not state or otherwise indicate that he was in pain.  Before and during the

4   scaling on July 21, 2009, plaintiff requested no anesthetic, and defendant Dr. Gyaami

5   administered none.  At no time did plaintiff communicate to defendant Dr. Gyaami that he had

6   any difficulty obtaining the items needed to follow defendant Dr. Gyaami's prescribed course of

7   treatment for his periodontitis.  (Defs.' SUDF 15-21, Ex. D, Gyaami Decl.)

8          Defendant Dr. Gyaami next saw plaintiff on February 3, 2010, to re-cement the crown on

9   plaintiff's molar (tooth 18), which Dr. Sorunke had re-cemented on February 3, 2009, but had

10  come off again.  On that occasion, in addition to re-cementing the crown, defendant Dr. Gyaami

11  noticed a cavity on the surface of plaintiff's tooth 15 – known as a mesial cavity – which

12  defendant Dr. Gyaami planned to fill on plaintiff's next visit.  At no time during defendant Dr.

13  Gyaami's session with plaintiff on February 3, 2010, did plaintiff complain about or mention any

14  problem with defendant Dr. Gyaami's scaling of his teeth on July 21, 2009.  (Defs.' SUDF 22-24,

15  Ex. D, Gyaami Decl.)

16         Defendant Dr. Gyaami next saw plaintiff on July 12, 2010, when he filled tooth 15 as had

17  been planned on February 3, 2010, and also filled cavities on plaintiff's teeth 4, 5, and 13.  While

18  filling plaintiff's teeth on July 12, 2010, plaintiff did not complain about or mention any problem

19  with the defendant's scaling procedure on July 21, 2009, or any other treatment he gave to him.

20  Later on July 12, 2010, plaintiff complained that defendant Dr. Gyaami's filling of tooth 15

21  resulted in that tooth being too tight against the adjacent tooth, preventing plaintiff from being

22  able to floss.  Defendant Dr. Gyaami attended to this complaint on July 29, 2010, when he used

23  an abrasive strip to smooth the contact area and make flossing easier.  During defendant Dr.

24  Gyaami's session with plaintiff on July 29, 2010, plaintiff expressed no complaint about

25  defendant Dr. Gyaami's scaling treatment on July 21, 2009 or any other treatment provided by the

26  defendant.   (Defs.' SUDF 25-29, Ex. D, Gyaami Decl.)

27         On August 17, 2010, plaintiff requested dental care for another crown that had come off

28  one of his molars (tooth 30).  Defendant Dr. Gyaami saw plaintiff on August 23, 2010, and re-

cemented the crown.  During defendant Dr. Gyaami's treatment session with plaintiff on August 23, 2010, plaintiff expressed no complaint about defendant Dr. Gyaami's scaling procedure on July 21, 2009 or any other treatment by the defendant.  (Defs.' SUDF 30-32, Ex. D, Gyaami Decl.)

Plaintiff did not see defendant Dr. Gyaami again until May 23, 2012, when they met concerning an inmate appeal that plaintiff submitted on April 24, 2012.  In that inmate appeal, plaintiff had complained about defendant Dr. Gyaami's treatment and requested a different dentist and the repair of damage defendant Dr. Gyaami allegedly caused to plaintiff.  When defendant Dr. Gyaami met with plaintiff on May 23, 2012, plaintiff refused to be interviewed by the defendant.  Defendant Dr. Gyaami's attempted interview with plaintiff was the last time that defendant Dr. Gyaami saw plaintiff.  (Defs.' SUDF 33-35, Ex. D, Gyaami Decl., Calderon Decl.)

As defendant Dr. Gyaami's supervisor, defendant Dr. Calderon was responsible for responding to plaintiff's inmate appeal regarding the treatment provided by Dr. Gyaami at the first level of review.  In responding to plaintiff's appeal, defendant Dr. Calderon reviewed plaintiff's dental chart, which reflected that defendant Dr. Gyaami had treated plaintiff on six occasions from June 3, 2009, to August 23, 2010.  Based on his review of plaintiff's dental records, defendant Dr. Calderon found that defendant Dr. Gyaami's prescribed course of dental; treatment for plaintiff's periodontitis – to brush and floss better, rinse with warm salt water, and to schedule another visit to have his teeth scaled – was the correct treatment for plaintiff's condition.  Defendant Dr. Calderon also found that defendant Dr. Gyaami's treatment of plaintiff concerning the crown replacements and filling of cavities was proper and that plaintiff had not complained about pain or expressed any other complaint about defendant Dr. Gyaami's treatment until nearly two years after his last visit with defendant Dr. Gyaami.  Based on his findings, defendant Dr. Calderon denied plaintiff's inmate appeal at the first level of review and cancelled it because it was untimely under the governing prison regulations.  In denying and canceling plaintiff's inmate appeal at the first level of review, defendant Dr. Calderon did not cover up any improper conduct by defendant Dr. Gyaami.  (Defs.' SUDF 36-41, Exs. D-E, Calderon Decl.)

/////

1    Plaintiff appealed the cancellation of his inmate appeal directly to the Office of Third

2    Level Appeals, which also cancelled that appeal and advised plaintiff on the procedure for

3    appealing a cancelled appeal.  On March 27, 2013, acting on the advice given by the Office of

4    Third Level Appeals, plaintiff submitted a new appeal challenging the cancellation of his inmate

5    appeal against defendant Dr. Gyaami.  Plaintiff's new inmate appeal ultimately resulted in the

6    issuance of a modification order calling on CMF to process plaintiff's inmate appeal beginning at

7    the first level of review.  In accordance with the modification order, the appeal was reviewed and

8    partially granted at the first level by assigning a different dentist, Dr. Kapoor, to treat plaintiff –

9    and otherwise denied.  The same decision was made at both the second and third levels of review.

10    (Defs.' SUDF 42-46, Ex. E.)

11    Plaintiff next sought dental treatment on July 23, 2013, when he requested "emergency

12    tooth repair" for a "severe toothache."  Plaintiff stated in his request that "Dr. Gyaami can't

13    perform the work" because by that time plaintiff had sued the defendant.  On July 30, 2013, Dr.

14    Hu saw plaintiff, noted defective fillings in and gross caries below the gingival or gum line of

15    plaintiff's teeth 1 and 2.  He also found those teeth to be "nonrestorable" and proposed extracting

16    them on plaintiff's next visit.  Plaintiff consented to Dr. Hu's prescribed treatment, and Dr. Hu

17    performed the extractions of teeth 1 and 2 on August 6, 2013.  On August 12, 2013, Dr. Kapoor

18    saw plaintiff for a post-operation check-up.  Plaintiff reported no pain, and Dr. Kapoor advised

19    him to avoid chewing on the right side of his mouth.  Plaintiff advised Dr. Kapoor of a tooth in

20    the left upper posterior, which Dr. Kapoor noted was tooth 15 and needed an evaluation for a

21    broken cusp.  (Defs.' SUDF 47-54, Ex. D.)

22    A frequent cause of fractured cusps is inadequate dentin support of cusps from extensive

23    caries or large restorations.  They are not caused by a dentist scaling tartar from teeth.  Dr.

24    Kappor found gross decay in the roots of tooth 15 and decay in teeth 13, 14, and 18.  Based on his

25    assessment of plaintiff's condition, Dr. Kapoor planned to extract plaintiff's tooth 15, which was

26    not restorable, and to replace the crowns in plaintiff's teeth 13, 14, and 18.  Plaintiff consented to

27    Dr. Kapoor's treatment plan on December 12, 2013.  However, on January 9, 2014, plaintiff

28    refused to have tooth 15 extracted, citing a need to clarify the need to extract the tooth "for legal

10

reasons." On March 13, 2014, plaintiff requested that Dr. Kappor put a crown on tooth 15 – despite Dr. Kapoor's explanation that tooth 15 was non-restorable because of decay into the roots – and refused treatment on his other teeth. (Defs.' SUDF 55-60, Ex. D, Calderon Decl.)

According to defendant Dr. Gyaami's declaration, he strives to provide the best possible dental care to his patients and did so during his treatment of plaintiff. At no time during his treatment of plaintiff did defendant Dr. Gyaami intentionally or knowingly disregard any risk of harm to plaintiff or cause him any harm. (Defs.' SUDF 61-62, Gyaami Decl.)

## ANALYSIS

Based on the undisputed evidence submitted in connection with the pending motion, the undersigned finds that the defendants are entitled to summary judgment in their favor on the merits of plaintiff's Eighth Amendment deliberate indifference claim. As an initial matter, the undersigned finds that based on the evidence submitted on summary judgment and described above, the defendants have borne their initial burden of demonstrating that there is no genuine issue of material fact with respect to the adequacy of the care they provided to plaintiff in connection with the plaintiff's dental needs.

Thus, given the evidence submitted by the defendants in support of the pending motion for summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his inadequate dental care claim. The court has reviewed plaintiff's verified complaint and his opposition to defendants' pending motion. The court finds, as both parties acknowledge, that there is a factual dispute in this case concerning defendant Dr. Gyaami's care during plaintiff's dental cleaning on July 21, 2009. On the one hand, defendant Dr. Gyaami maintains that plaintiff did not state or indicate in any way that he was in pain and he did not request an anesthetic during his cleaning. On the other hand, plaintiff maintains that on July 21, 2009, he informed defendant Dr. Gyaami that he was suffering extreme pain and sensitivity, but the defendant refused to stop the treatment or provide plaintiff with an anesthetic to reduce his suffering.

Notwithstanding this factual dispute, the court concludes that based on the record in this case, the defendants are entitled to judgment as a matter of law. First, viewing the evidence in the

11

1   light most favorable to plaintiff, plaintiff has not satisfied the objective component for an Eighth

2   Amendment violation.  It is well established that an Eighth Amendment deprivation "must be,

3   objectively, 'sufficiently serious' and result in the denial of 'the minimal civilized measure of

4   life's necessities." Farmer, 511 U.S. at 834.  Plaintiff's alleged need for an anesthetic during a

5   dental cleaning is not documented in his dental records or supported by medical evidence and is

6   not the type of objectively serious medical need that triggers constitutional protection provided by

7   the Eighth Amendment's Cruel and Unusual Punishment Clause.  See McGuckin, 974 F.2d at

8   1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and

9   worthy of comment or treatment; the presence of a medical condition that significantly affects an

10   individual's daily activities; or the existence of chronic and substantial pain are examples of

11   indications that a prisoner has a 'serious' need for medical treatment."); Doty v. County of

12   Lassen, 37 F.3d 540, 546 (9th Cir. 1994) ("The 'routine discomfort' that results from

13   incarceration and which is 'part of the penalty that criminal offenders pay for their offenses

14   against society' does not constitute a 'serious' medical need.").

15       Although the Ninth Circuit has not specifically addressed the precise circumstances before

16   this court, as defense counsel observes, a federal court in Michigan has analyzed a similar

17   deliberate indifference claim based on allegedly inadequate dental care.  Bout v. Bolden, 22 F.

18   Supp. 2d 646 (E.D. Mich. 1998), aff'd 225 F.3d 658 (6th Cir. 2000).  That court rejected a

19   prisoner's characterization of his serious medical need as one for anesthesia, explaining:

20           Plaintiff's "serious medical need" was not for anesthesia, but rather
            for tooth repair.  Plaintiff's disagreement with the course of
21           treatment – the decision to drill without anesthesia rather than
            further delay treatment given the minor nature of the repair and
22           relatively brief period of pain – does not state a constitutional
            claim.  Had [the dentist] gratuitously drilled plaintiff's teeth for no
23           good medical reason, then the evidence would clearly support a
            finding of willful and wanton infliction of pain and plaintiff would
24           have supported a direct claim for cruel and unusual punishment
            contrary to the Eighth Amendment.  However, where pain was an
25           incidental part of a dentist's chosen course of treatment, the
            question is not whether [the dentist] was indifferent to the
26           incidental pain, but rather whether he was indifferent to the
            plaintiff's existing dental condition.  Plaintiff conceivably may have
27           some other claim against [the dentist] – for battery, perhaps, for
            malpractice, perhaps – but he does not have a constitutional claim
28           arising out of his treatment . . . .

12

1    <u>Bout</u>, 22 F. Supp. 2d at 651.[1]  Under this line of reasoning, plaintiff's "serious medical need" in

2    this case was for treatment of his periodontitis.  That plaintiff may have experienced pain as an

3    incidental part of the course of treatment provided for that condition fails to state a cognizable

4    constitutional claim.

5            In any event, even if plaintiff could satisfy the objective component of an Eighth

6    Amendment violation, he has not come forward with any evidence satisfying the subjective

7    component.  Specifically, before it could be said that defendant Dr. Gyaami violated plaintiff's

8    right to adequate dental care, the defendant's indifference to plaintiff's dental needs would need

9    to be substantial.  Only indifference that offends "evolving standards of decency" violates the

10   Eighth Amendment.  <u>Estelle</u>, 429 U.S. at 106.  Here, plaintiff's deliberate indifference claim

11   against defendant Dr. Gyaami is based on the defendant's refusal to provide him with an

12   anesthetic during a single dental cleaning.  Again, viewing the evidence in the light most

13   favorable to plaintiff, based on the record before this court, defendant Dr. Gyaami's refusal is not

14   the kind of indifference that could fairly be classified as rising to the level of "repugnant to the

15   conscience of mankind."  <u>Estelle</u>, 429 U.S. at 106.

16   _____

17   [1]  The district court in <u>Bout</u> relied in part on the decision in <u>Snipes v. DeTelle</u>, 95 F.3d 586 (7th
18   Cir. 1996).  In that case the Seventh Circuit held that removal of a toenail without the use of
     anesthetic should be viewed as a course of treatment, and that even if the desire for anesthetic
19   were a separable medical need, denial of that need was not objectively sufficiently serious to
     constitute the denial of the minimal civilized measure of life's necessities, regardless of the
20   doctor's motives, because it is not the type of barbaric treatment the Eighth Amendment
     prohibits.  95 F.3d at 591-92.  Accordingly, the court rejected a prisoner's contention that "a risk
21   of needless pain" was enough to bring a claim within the purview of the Eighth Amendment:

22              To say the Eighth Amendment requires prison doctors to keep an
                inmate pain-free in the aftermath of proper medical treatment would
23              be absurd.  It would also be absurd to say . . . that the Constitution
                requires prison doctors to administer the least painful treatment.
24              That may be preferable, but the Constitution is not a medical code
                that mandates specific medical treatment. . . .
25
                Whether and how pain associated with medical treatment should be
26              mitigated is for doctors to decide free from judicial interference,
                except in the most extreme situations.
27

28   <u>Id</u>. at 592.

                                                    13

1    At most, plaintiff has asserted a claim for negligence and/or one based on a mere

2   difference of opinion as to the appropriate course of medical treatment for his condition in

3   connection with his dental cleaning as well as the other dental care defendant Gyaami provided

4   him.  However, it is well established that mere 'indifference,' 'negligence,' or 'medical

5   malpractice' will not support this cause of action."  <u>Broughton</u>, 622 F.2d at 460 (9th Cir. 1980)

6   (citing <u>Estelle</u>, 429 U.S. at 105-06).  <u>See also Wood</u>, 900 F.2d at 1334 ("In determining deliberate

7   indifference, we scrutinize the particular facts and look for substantial indifference in the

8   individual case, indicating more than mere negligence or isolated occurrences of neglect.");

9   <u>McGuckin</u>, 974 F.2d at 1060 (an "isolated occurrence" or "isolated exception" to a defendant's

10   overall treatment which militates against finding deliberate indifference).

11    It is also well established that a mere difference of opinion between a prisoner and prison

12   medical personnel as to the proper course of medical care does not give rise to a cognizable §

13   1983 claim.  <u>See Snow</u>, 681 F.3d at 988; <u>Jackson</u>, 90 F.3d at 332; <u>Sanchez</u>, 891 F.2d at 242;

14   <u>Franklin</u>, 662 F.2d at 1344; <u>see also Fleming v. Lefevere</u>, 423 F. Supp. 2d 1064, 1070 (C.D. Cal.

15   2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue

16   of fact because he has not shown that he has any medical training or expertise upon which to base

17   such an opinion.").  To establish that a difference of medical opinion as to the appropriate course

18   of treatment amounted to deliberate indifference, plaintiff must "show that the course of treatment

19   the doctors chose was medically unacceptable under the circumstances" and that "they chose this

20   course in conscious disregard of an excessive risk to [the prisoner's] health."  <u>Jackson</u>, 90 F.3d at

21   332.  <u>See also Toguchi</u>, 391 F.3d at 1058.

22    In this case, plaintiff has not come forward with any evidence demonstrating that the

23   course of treatment provided by defendant Dr. Gyaami, and tacitly approved defendant Dr.

24   Calderon who reviewed plaintiff's inmate appeal, was medically unacceptable under the

25   circumstances.[2]  Plaintiff also has not come forward with any competent evidence demonstrating

26   _____

27   [2]  Insofar as plaintiff claims that defendant Dr. Calderon violated his constitutional rights by
cancelling his initial inmate appeal as untimely, he fails to state a cognizable claim for relief.
Prison officials are not required under federal law to process inmate grievances in a specific way

28   or to respond to them in a favorable manner.  Even if prison officials delay, deny, or erroneously

1  that defendants chose or approved of plaintiff's course of treatment in conscious disregard of an

2  excessive risk to his health.  By merely expressing his opinion in this regard, plaintiff fails to

3  create a genuine issue of material fact.  See, e.g., Hansen v. United States, 7 F.3d 137, 138 (9th

4  Cir.1993) ("When the non-moving party relies on its own affidavits to oppose summary

5  judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue

6  of material fact."); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose

7  a motion must be made on personal knowledge, set out facts that would be admissible in

8  evidence, and show that the affiant or declarant is competent to testify on the matters stated.").[3]

9  /////

10

11  screen out a prisoner's inmate grievance, they have not deprived him of a federal constitutional
right.  This is because "inmates lack a separate constitutional entitlement to a specific prison

12  grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v.
Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  See also, e.g., Wright v. Shannon, No. CIV F-05-

13  1485 LJO YNP PC, 2010 WL 445203 at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that
prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the

14  First Amendment); Walker v. Vazquez, No. CIV F-09-0931 YNP PC, 2009 WL 5088788 at *6-7
(E.D. Cal. Dec. 17, 2009) (plaintiff's allegations that prison officials failed to timely process his

15  inmate appeals failed to a state cognizable under the Fourteenth Amendment); Towner v.
Knowles, No. CIV S-08-2833 LKK EFB P, 2009 WL 4281999 at *2 (E.D. Cal. Nov. 20, 2009)

16  (plaintiff's allegations that prison officials screened out his inmate appeals without any basis
failed to indicate a deprivation of federal rights); Williams v. Cate, No. F-09-0468 OWW YNP

17  PC, 2009 WL 3789597 at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest
in the vindication of his administrative claims.").

18

19  [3]  The undersigned notes that in other contexts, courts within this circuit have consistently
rejected a prisoner's attempt to dictate the terms of their pain medication.  See, e.g., Parlin v.

20  Sodhi, No. 10–6120 VBF (MRW), 2012 WL 5411710 at *4 (C.D. Cal. Aug. 8, 2012) ("At its
core, Plaintiff's claim is that he did not receive the type of treatment and pain medication that he

21  wanted when he wanted it.  His preference for stronger medication – Vicodin, Tramadol, etc., –
represents precisely the type of difference in medical opinion between a lay prisoner and medical

22  personnel that is insufficient to establish a constitutional violation."); Tran v. Haar, No. CV 10–
07740 CJC (SS), 2012 WL 37506 at *3–4 (C.D. Cal. Jan. 9, 2012) (plaintiff's allegations that

23  defendants refused to prescribe "effective medicine" such as Vicodin and instead prescribed
Ibuprofen and Naproxen reflected a difference of opinion between plaintiff and defendants as to

24  the proper medication necessary to relieve plaintiff's pain and failed to state an Eighth
Amendment claim); Ruiz v. Akintola, No. CIV S–09–0318 JAM GGH P, 2010 WL 1006435 at

25  *7 (E.D. Cal. Mar. 17, 2010) (granting summary judgment in favor of defendants on plaintiff's
inadequate medical care claim where he presented no expert evidence that the Ultram which

26  defendants prescribed, instead of the Norco that U.C. Davis physicians had recommended, was
not medically warranted or reasonable), aff'd No. 10–16516 (9th Cir. Nov. 2, 2011).

27

28

Accordingly, for all of the reasons discussed above, the undersigned will recommend that defendants' motion for summary judgment be granted.[4]

## OTHER MATTERS

Insofar as plaintiff asserts state law tort claims in his amended complaint, a district court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The court's discretion to decline jurisdiction over state law claims is informed by the values of judicial economy, fairness, convenience, and comity. Acri v. Varian Associates, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). In addition, "[t]he Supreme Court has stated, and [the Ninth Circuit] ha[s] often repeated, that 'in the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.'" Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

Of course, "primary responsibility for developing and applying state law rests with the state courts." Curiel v. Barclays Capital Real Estate, Civ. No. S–09–3074 FCD KJM, 2010 WL 729499 at *1 (E.D. Cal. Mar. 2, 2010). Here, consideration of judicial economy, fairness, convenience, and comity all point toward declining to exercise supplemental jurisdiction. Therefore, the undersigned will recommend declining to exercise supplemental jurisdiction over plaintiff's state law claims.

## CONCLUSION

IT IS HEREBY ORDERED that the Clerk of the Court is directed to randomly assign a United States District Judge to this action.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (Doc. No. 26) be granted;

2. The court decline to exercise supplemental jurisdiction over any state law claims and dismiss any state law claims without prejudice to plaintiff re-filing them in state court; and

---

[4] In light of the recommendation set forth in these findings and recommendations, the undersigned declines to address defendants' alternative argument that they are entitled to summary judgment in their favor based on the affirmative defense of qualified immunity.

1        3.  This action be closed.

2        These findings and recommendations are submitted to the United States District Judge

3    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

4    after being served with these findings and recommendations, any party may file written

5    objections with the court and serve a copy on all parties.  Such a document should be captioned

6    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

7    objections shall be filed and served within seven days after service of the objections.  The parties

8    are advised that failure to file objections within the specified time may waive the right to appeal

9    the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10   Dated:  June 1, 2015

11

12                                          _Dale A. Drozd_

13                                          DALE A. DROZD
                                            UNITED STATES MAGISTRATE JUDGE

14   DAD:9
     alfo2143.57msj

15

16

17

18

19

20

21

22

23

24

25

26

27

28